# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEREMIAH WEEKES and
WAHEEB BUTT,

    Defendants.
    _____/

CASE NO. 17-20155
HON. DENISE PAGE HOOD

## ORDER DENYING MOTION TO DISMISS [Dkt. No. 33]

### I.   Introduction

On July 27, 2017, Defendant Jeremiah Weekes ("Weekes") and Defendant Wahab Butt ("Butt") were charged in a two-count First Superseding Indictment with: (a) health care fraud conspiracy, in violation of 18 U.S.C. § 1349; and (b) conspiracy to unlawfully distribute controlled substances, in violation of 21 U.S.C. § 846, 841(a)(1). On March 23, 2018, Weekes filed a Motion to Dismiss, arguing that both counts fail to state an offense and are improperly pled. Butt has filed a notice of joinder in Weekes' Motion to Dismiss, and the Government has filed a response.

### II.   Background

The following "facts" are alleged in the First Superseding Indictment.

Summit Visiting Physicians Group, P.C. ("Summit") is a Michigan corporation

operating as a medical clinic in Dearborn Heights, Michigan. Summit purports to provide medical services to Medicare beneficiaries both in its office and at their homes. Para. 4. Weekes is listed as the owner of Summit, and Butt operates and controls Summit. Para 4-5. As a participating provider in Medicare, Summit agreed to abide by the policies and procedures, rules, and regulations regarding reimbursement claims Summit submitted to Medicare. Para. 11.

With respect to Count I, Weekes and Butts are alleged to have, from approximately January 2016 to March 2017, submitted false and fraudulent claims to Medicare, engaged in the concealment of those false and fraudulent claims, and diverted proceeds of the fraud for personal use and benefit. Para. 16-17. The Government alleges that Weekes and Butt:

(A) billed Medicare for medical services that were "medically unnecessary, not provided, and not provided by Dr. WEEKES despite the fact that the bills to Medicare represented that Dr. WEEKES provided the services." Para. 20.

(B) certified patients to receive home healthcare services that were medically unnecessary by having Weekes provide Butt with pre-signed home healthcare evaluation forms that showed beneficiaries met the criteria to receive home healthcare services, which Butt (and other Summit personnel) would complete without an evaluation by Weekes, with Butt "then accept[ing] kickbacks and bribes from home healthcare companies for referring those patients." Para. 21.

The Government alleges that Summit billed Medicare over $2 million for purportedly medically necessary services between January 2016 and March 2017. Para. 22.

During the same time period, home healthcare companies billed Medicare over $1 million for referrals from Summit based on purported certifications signed by Weekes. Para. 23.

With respect to Count II, the Government alleges that, from January 2016 through March 2017, Butt and Weekes conspired to unlawfully distribute "prescription Schedule II through V controlled substances" . . . "outside the course of professional medical practice" in exchange for cash and other remuneration for the purpose of enriching themselves. Para. 25-27. The conspiracy was accomplished by Weekes agreeing with Butt – and providing Butt with – pre-signed blank prescription pads so that Butt could issue prescriptions for Schedule II controlled substances (including oxycodone and hydrocodone) under Weekes' DEA license, even in the absence of any medical evaluation by Weekes. Para. 30. Butt and other co-conspirators allegedly found and recruited "patients," who would come to Summit and obtain the prescriptions signed by Weekes, even though most of the recruited "patients" had no medical problems warranting medical attention. Para. 31. These prescriptions were filled and sold for profit. *Id.* For the relevant time period, Weekes and Butt allegedly issued about 6,000 prescriptions for Schedule II through V controlled substances (totally approximately 450,000 dosage units), including OxyContin, Percocet, hydrocodone, Vicodin and Norco, alparazolam, Xanax, and

coedine cough syrup. Para. 32

## III. Analysis

In evaluating a motion to dismiss for failure to state an offense and properly plead a claim, this Court recently stated:

> An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend. Second, the indictment is sufficient if it enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States,* 418 U.S. 87, 117 (1974). "An indictment as drafted is presumed sufficient if it tracks statutory language, cites the elements of the crimes charged, and provides approximate dates and times." *United States v. Chichy,* 1 F.3d 1501, 1504 n. 3 (6th Cir. 1993). A motion to dismiss is limited to the four corners of the indictment and that the allegations in the indictment are assumed to be true and viewed in the light most favorable to the Government. *United States v. Keller,* 2009 WL 2475454 * 4 (E.D. Mich. Aug. 11, 2009) (unpublished); *United States v. Landham,* 251 F.3d 1072, 1080 (6th Cir. 2001)(A trial court does not evaluate the evidence upon which the indictment is based in ruling on a motion to dismiss).

*United States v. D'Anna*, 2015 WL 1954490, at *6 (E.D. Mich. Apr. 29, 2015).

### A. Count I

Weekes argues that Count I should be dismissed because it does not notify him of the charges against him as it fails to assert the facts that constitute the offense charged. Citing *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992); *Hamling v. United States*, 418 U.S. 87, 117-18 (1974). Weekes states that Sixth Circuit case law requires specific executions of a health care fraud scheme

to be pled in a conspiracy charged under Section 1349, because "[c]onspiracy to commit health-care fraud requires some fraudulent act." *United States v. Patel*, 694 F. App'x 991, 994 (6th Cir. 2017). Weekes argues that an indictment containing only general allegations of a health care fraud's conspiracy's purpose is not sufficiently pled.

Weekes cites two cases where indictments charging violations of Section 1349 survived motions to dismiss. *See United States v. Walters*, 2016 U.S. Dist. LEXIS 48716, at *8 (E.D. Ky. Apr. 12, 2016) (Section 1349 case); *United States v. Makki*, 2007 U.S. Dist. LEXIS 17413, at *21-22 (E.D. Mich. Mar. 13, 2007) (Section 1347 case). In *Walters*, there were 99 separately charged health care fraud counts in addition to the conspiracy charge. In *Makki*, each of the two counts specifically indicated a number of claims or patients during identifiable periods of time that were less than 4 months. Weekes contends that the First Superseding Indictment only alleges that more than $3,000,000 was billed to Medicare over 14 months, with no specific fraudulent acts identified therein. Weekes asserts that specifically identifying alleged acts in the discovery materials is not sufficient to give him true notice of the crime charged or protection against subsequent prosecution. Relying on *Superior Growers Supply* 982 F.2d at 176 n.4.

The Government counters that Section 1349 does not have an overt act

requirement, so no particular act needs to be alleged for the indictment to be sufficient. Relying on *D'Anna*, 2015 WL 1954490, at *6; *Hamling*, 418 U.S. at 117 (1974); *Chichy,* 1 F.3d at 1504 n.3. The Government contends that Section 1349 provides only that: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The Government cites the Supreme Court's decision in *United States v. Shabani*, 513 U.S. 10, 15-16 (1994), where the court determined that an overt act was not an element of a drug conspiracy under 21 U.S.C. § 846. The *Shabani* court stated that "the plain language of the statute and settled interpretive principles reveal that proof of an overt act is not required to establish a violation of 21 U.S.C. § 846." *Id. See also United States v. Dempsey*, 733 F.2d 392, 396 (6th Cir. 1984).

The Government correctly contends that the language of Section 846 is "nearly identical" to the language in Section 1349, as Section 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The Court notes that the only difference between Section 1349 and Section 846 is that Section 1349 uses the word "chapter" and Section 846 uses the word "subchapter."

As the Supreme Court has held that an overt act is not a required element when charging a person under Section 846 and Section 1349 is substantively identical to Section 846, the Court concludes that an overt act is not a required element of a charge pursuant to Section 1349. The Court finds that the First Superseding Indictment adequately notified Weekes of the charges against him when it specified that Weekes submitted bills to Medicare for services not rendered and/or that had fraudulent home health certifications and that such actions occurred through his activities at Summit between January 2016 and March 2017, all for the purpose of enriching himself. The Court concludes that, for purposes of charging Weekes with conspiracy, the Government's First Superseding Indictment is sufficiently pled. The Court denies Weekes' Motion to Dismiss with respect to Count I.

**B.     Count II**

Weekes argues that there are two components necessary to convict a person of violating 21 U.S.C. § 841(a)(1) and an indictment must allege both: (1) a defendant prescribed controlled substances "outside the course of professional medical practice;" and (2) the controlled substances were prescribed for "other than a legitimate medical practice." Relying on *United States v. Volkman*, 736 F.3d 1013, 1021 (6th Cir. 2013) ("*Volkman* I"), *vacated on other grounds*, 135 S.Ct. 13 (2014); 21 C.F.R. § 1306.04 (a prescription must be issued for a "legitimate medical purpose by an individual

acting in the usual course of professional practice."); *United States v. Kirk*, 584 F.2d 773, 784 (6th Cir. 1978) ("Two of the essential elements of [Section 841(a)(1)] are: The prescriptions issued by the appellant must have been "not in the usual course of professional practice" and "not for a legitimate medical or research purpose."); *United States v. Black*, 512 F.2d 864, 867 (9th Cir. 1975); *United States v. August*, 984 F.2d 705, 712 (6th Cir. 1992) ("the government needed to prove, in addition, that the distribution occurred outside the usual course of professional practice and for no legitimate medical purpose" as it related to defendant doctor); *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995). Weekes argues that Count II of the First Superseding Indictment is deficient because it does not state that he prescribed for "other than a legitimate medical practice."[1]

The Court is not persuaded by Weekes' argument, which is based on outdated case law. When *Volkman* I was remanded, the Sixth Circuit held that "knowingly distributing prescriptions outside the course of professional practice is a sufficient condition to convict a defendant under the criminal statutes relating to controlled

---

[1] As the *Volkman* I court noted, "It has been held that there is no difference in the meanings of the statutory phrase, 'In the usual course of professional practice' and the regulations' phrase, 'legitimate medical practice.'" *Volkman* I, 736 F.3d at 1021 (citing *U.S. v. Plesons*, 560 F.2d 890, 897 (8th Cir. 1977); *U.S. v. Rosenberg*, 515 F.2d 190, 197 (9th Cir. 1975), *cert. denied*, 423 U.S. 1031 (1975)). Weekes argues that the Sixth Circuit's interpretation of *Plesons* and *Rosenberg* was erroneous, but that has no bearing on the Court's analysis.

substances." *United States v. Volkman*, 797 F.3d 377, 386 (6th Cir. 2015) ("*Volkman II*") (citing *United States v. Kanner*, 603 F.3d 530, 535 (8th Cir. 2010) and *United States v. Armstrong*, 550 F.3d 382, 397 (5th Cir. 2008), *overruled on other grounds by United States v. Balleza*, 613 F.3d 432, 433 (5th Cir.2010)).

As the Fifth Circuit stated:

To convict the defendants of illegally dispensing controlled substances in violation of 21 U.S.C. § 841(a)(1), the Government was required to prove "(1) that [they] ... dispensed a controlled substance, (2) that [they] acted knowingly and intentionally, and (3) that [they] did so other than for a legitimate medical purpose and in the usual course of [ ] professional practice." *United States v. Norris*, 780 F.2d 1207, 1209 (5th Cir.1986) (quoting *United States v. Rosen*, 582 F.2d 1032, 1033 (5th Cir.1978)). The third element is not expressly required by the text of § 841, but relevant regulations provide that a controlled substance can be dispensed by a prescription "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).

The Supreme Court held in *Moore*, 423 U.S. at 138–43, 96 S.Ct. 335,[2] that a registered physician could be charged and convicted under § 841 of the CSA [Controlled Substances Act] for drug trafficking. Although the precise elements of a § 841 offense were not expressly addressed in *Moore*, the Supreme Court rejected the "suggest [ion] that if a registrant could be reached under § 841, he could not be prosecuted merely because his activities fall outside the 'usual course of practice.' " *Id.* at 139, 96 S.Ct. 335. Under the Harrison Act, the predecessor to the CSA, "[p]hysicians who stepped outside the bounds of professional practice could be prosecuted," *id.* at 132, 96 S.Ct. 335, and because Congress intended the CSA to strengthen rather than weaken prior drug laws, a defendant physician could still be convicted under § 841 for conduct that exceeded the bounds of professional practice. *Id.*

---

[2]*United States v. Moore*, 423 U.S. 122 (1975).

Moreover, a logical reading of 21 C.F.R. § 1306.04, the applicable regulation, shows that liability is not conjunctive. *See United States v. Hayes*, 595 F.2d 258, 259 (5th Cir.1979) (stating that § 1306.04 defines the circumstances in which a registrant may be held to have violated the proscription against manufacturing, distributing, or dispensing a controlled substance contained in 21 U.S.C. § 841). The regulation states that for a "prescription for a controlled substance to be effective[, it] must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04. *Both prongs are necessary for a prescription to be legitimate; one is not sufficient. Id. The logical converse is that a practitioner is unauthorized to dispense a controlled substance if the prescription either lacks a legitimate medical purpose or is outside the usual course of professional practice. See id.; see also United States v. Nelson*, 383 F.3d 1227, 1233 (10th Cir.2004) (holding that the converse of the affirmative requirement of a medical purpose in usual course of practice would be if either was missing, not if both were missing). In other words, *knowingly distributing prescriptions outside the course of professional practice is a sufficient condition to convict a defendant under the criminal statutes relating to controlled substances.*[3]

---

[3] As the *Armstrong* court noted:
In *Gonzales v. Oregon*, the Supreme Court determined that § 1306.04 "does little more than restate the terms of the statute itself." 546 U.S. 243, 257, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (holding that the CSA did not authorize the Attorney General to prohibit doctors from prescribing regulated drugs for use in physician-assisted suicide). The "regulation uses the terms 'legitimate medical purpose' and 'the course of professional practice,' but this just repeats two statutory phrases and attempts to summarize the others." *Id*.; see 21 U.S.C. § 802(21) (using the phrase "in the course of professional practice" as part of the definition of "practitioner"); *see* 21 U.S.C. § 830(b)(3)(A)(ii) (reporting provision of CSA defines "valid prescription" as one that is issued "for a legitimate medical purpose by an individual practitioner ... acting in the usual course of the practitioner's professional practice").

*Armstrong*, 550 F.3d at 397 n.26.

*Armstrong*, 550 F.3d 382, 396-97 (emphasis added) (footnote omitted).

Based on *Volkman* II and *Armstrong*, the Court concludes that the Government was not required to allege that Weekes prescribed the controlled substances for "other than a legitimate medical practice" in addition to alleging that Weekes prescribed the controlled substances "outside the course of professional medical practice."

Weekes also argues that interpreting Section 841(a)(1) in the disjunctive, as the Government advocates, would violate the rules of federalism. Weekes asserts that Michigan's state law regulating the prescription of controlled substances, M.C.L. § 333.7401 provides that a practitioner shall not "prescribe a controlled substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice." Pursuant to Michigan case law, the prosecution must establish the subjective "bad faith" of the practitioner and that it was intended to be prescribed for a nonmedical purpose. *People v. Orzame*, 224 Mich.App. 551, 565 (1997). Weekes states that the Michigan statute requires more than 21 C.F.R. § 1306.04 and that, in simply relying on Section 1306.04, the Government would be able to convict Weekes on a lesser standard than Michigan law requires. The Court finds this argument misplaced, as there is only a federal prosecution – and no state law charges – at issue in this matter.

The Court denies Weekes' Motion to Dismiss as it relates to Count II of the

First Superseding Indictment.

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** the Motion to Dismiss. [Dkt. No. 33]

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: August 17, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 17, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager